**R. W. BRACK v. JERRY W. CARTER, et al., as and constituting the Railroad & Public Utilities Commission of the State of Florida, and AIRLINE SERVICE, INC., a corporation.**

37 So. (2nd) 89                                          June Term, 1948
September 28, 1948                                        En Banc
Rehearing denied October 28, 1948

*John E. Mathews* and *P. Guy Crews,* for petitioner.

*Lewis W. Petteway,* for respondents.

*D. Byron King* and *Clifford T. Inglis,* for Airline Service, Inc., intervenors.

PER CURIAM:

The Petitioner, R. W. Brack, operating under the name of Airport Limousine Service, between the Municipal Airport of the City of Jacksonville and various points in said city, is under contract with Eastern Airlines, Delta Airlines and Florida Airways, to transport passengers, baggage and personnel of the airlines from the airport to various points in the City of Jacksonville, and from various points in said city to the airport. He had been rendering this service for a number of years, and used limousines of more than seven passenger capacity, excluding the driver.

On March 1, 1948, the Florida Railroad & Public Utilities Commission brought a bill in equity seeking a permanent injunction to prohibit Brack from carrying on his transportation service between the Jacksonville Municipal Airport and points in the city, alleging that he was violating the provisions of Section 323.01 and Section 323.22, Florida Statutes Annotated.

After the original bill of complaint seeking permanent injunction was filed, Airline Service, Inc. intervened in the suit and prayed for a temporary injunction or restraining order. Thereafter the Commission joined with the Airline Service, Inc. and asked for a temporary restraining order.

In due course Brack filed sworn answers to the bill of complaint, and also to the application of Airlines Service, Inc. for temporary injunction.

After a hearing upon the joint application for a temporary restraining order, the court entered the following order:

"1. The Clerk of this Court be, and he is hereby, ordered and directed to issue temporary restraining order under the seal of this Court directed to the defendant, R. W. Brack, his agents, servants, drivers, and employees, and each and every of them, enjoining and restraining the said persons from transporting persons or property for compensation to, from and between the Jacksonville Municipal Airport and points within the City of Jacksonville until the further order of this Court.

"2. This temporary restraining order being granted upon the motion and application of The Florida Railroad and Public Utilities Commission no bond is required of the plaintiffs herein.".

It is this order which is sought to be reviewed by Certiorari.

Petitioner Brack contends that he is exempt from the jurisdiction and control of the Florida Railroad & Public Utilities Commission by virtue of the provision of Section 323.29 F.S.A. 1941, which we quote:

" . . . There shall be further exempted from the provisions of this chapter and from commission jurisdiction and control, persons operating motor vehicles within the corporation limits of any city or town or the adjoining suburban territory . . . where such business of carriage is regulated by the legislative body of such cities or towns."

We are of the opinion the record discloses that Brack's service is not such as is contemplated by the above exemption.

It is our view that this exemption was intended to apply to "persons operating motor vehicles within the corporate limits of any city or town or (within) the adjoining suburban territory . . . where such business of carriage is regulated by the legislative bodies of such cities or towns . . . " when such persons operate within the city or town and as an incident thereto operate within the adjoining suburban territory. If we were to give the words "or the adjoining suburban territory" their customary and usual meaning we would hold, because of the use of the disjunctive "or," that this exemption would apply to persons operating vehicles exclusively within suburban territory which adjoins some city or town. Clearly, such was not the intention of the legislature. There would be no legal justification for any city or town to regulate the operation of motor vehicles of this character where such operation was entirely outside of the corporate limits. We must consider said verbiage in connection with the provision "where such business of carriage is regulated by the legislative body of such cities or towns." So it is we construe said exemption to mean primary operation within any city or

town and casual or incidental operation within adjoining suburban territory. Moreover, we are constrained to the view that the exemption set forth in Section 323.29 F.S.A. contemplates a transportation service for the general public from place to place within a city or town and fortuitously within its adjoining suburban territory.

Brack's operation is not within the city limits and incidentally within the adjoining suburban territory. His vehicles do not pick up passengers and take them to different points within the city, nor do they collect passengers and transport them to different points within the adjoining suburban territory. He does not serve the people living along his routes but operates under contract on a fixed schedule between various points within the city and the municipal airport. Counsel for both petitioner and respondents recognize that said municipal airport is located about three-quarters of a mile north of the city limits of the City of Jacksonville. Indeed, the lower court should, and may, have taken judicial notice of the fact that an area within three-quarters of a mile of the city limits of a city the size of Jacksonville, and adjacent to a broad, heavily traveled, through thoroughfare, is adjoining suburban territory. Everybody in Duval County where this case was heard knows the foregoing fact. The Court is presumed to know what everyone knows. Counsel for the respondents do not contend seriously, nor could they, that the municipal airport is not located within "adjoining suburban territory." Furthermore, the sworn answer filed by R. W. Brack alleges the airport to be located in an area which "is suburban territory adjoining the said City of Jacksonville."

It is unnecessary to return this case to the lower court for the purpose of determining whether the municipal airport is situated within area which is adjoining suburban territory. Regardless of the fact that the municipal airport is located within area which is adjoining suburban territory, the petitioner still does not come within the exemption set forth in Section 323.29 F.S.A. The record fails to disclose any assumption of jurisdiction on the part of the city over the ad-

joining suburban territory or any effective municipal regulation of the petitioner's operations within the adjoining suburban territory for the benefit of the traveling public, nor can we envisage any such regulation in any case with a factual situation similar to that presented by this record. The Railroad & Public Utilities Commission of the State of Florida has jurisdiction to regulate the operations of the petitioner, (Tampa Transit Lines, Inc. et al. v. Matthews et al., 158 Fla. 875, 27 So. (2nd) 377).

The petition for writ of certiorari should be, and is, denied.

THOMAS, C. J., TERRELL, ADAMS, SEBRING, BARNS and HOBSON, JJ., concur.

CHAPMAN, J., dissents.

CHAPMAN, J., dissenting:

The Florida Railroad and Public Utilities Commission filed its bill of complaint in the Circuit Court of Duval County, Florida, against R. W. Brack under the provisions of Section 323.24, F.S.A., and alleged the defendant, R. W. Brack, is an auto transportation company within the meaning of the term as defined by Section 323.01, F.S.A., but does not hold a certificate or permit from the plaintiff commission authorizing the transportation of persons and property for compensation over the public highways of Florida as required by Section 323.02, F.S.A.

The defendant, Brack, it is alleged, is engaged in the transportation of passengers for hire in motor vehicle limousines of a passenger carrying capacity of from *seven* to *nine* persons over the public highways of Florida between the Jacksonville, Florida, Municipal Airport and the City of Jacksonville without appropriate authority from the Commission and contrary to the provisions of Section 323.02, supra. The area and territory, it is alleged, between the Municipal Airport and the City of Jacksonville and the operations thereon by the defendant are subject to the jurisdiction of the Florida Railroad and Public Utilities Commission.

The defendant Brack, as an auto transportation company within the meaning of Section 323.01, F.S.A., is now, and for

some time past has been, engaged unlawfully as a common carrier of passengers for hire between the Jacksonville Municipal Airport and the City of Jacksonville in that he operates between fixed terminii and on regular schedule between said points, contrary to Sections 323.02 and 323.03, supra. The defendant has operated said motor limousines over the highways of Florida for hire without registration with the plaintiff Commission and without displaying number plates or stickers as required by Section 323.22, F.S.A. The defendant has not paid to the State of Florida a mileage tax for the operation of motor vehicles over the highways of Florida as prescribed by Section 323.15, F.S.A. He has failed to obtain public liability and property damage insurance as required by Section 323.06, F.S.A. The plaintiff Florida Railroad and Utilities Commission prayed for an injunction, both temporary and permanent, from transporting persons or property for hire over the highways of Florida in violation of the provisions of Sections 323.01, 323.02, 323.03, 323.06, 323.15, and 323.22, F.S.A.

On March 25, 1948, an order of intervention was entered in behalf of Airline Service, Inc., permitting it to become a plaintiff to the cause, and pursuant thereto represented to the Court that the Airline Service, Inc., was a holder of a certificate of public convenience and necessity No. 324 issued to it on January 26, 1948, by the Florida Railroad and Public Utilities Commission and it *alone* is authorized to transport passengers from Jacksonville to its Airport and return. The defendant Brack, it is alleged, is operating a competitive transportation service between the points supra, contrary to law and the operation thereof is in derogation of the rights and privileges of the intervenor, Airline Service, Inc.

The answer of the defendant Brack admitted the allegation that he did not hold a certificate or permit from the Railroad and Public Utilities Commission and denied that he was operating a transportation service for hire within the meaning of Section 323.01, F.S.A. The answer set out that he was operating under a license issued to him by the City of Jacksonville and the City of Jacksonville had the exclusive right

and power to regulate the transportation of passengers from the City to the Municipal Airport and return. It was not necessary to obtain from the Railroad and Public Utilities Commission a certificate or permit to operate over the territory because the area fell within the exemption set forth in Section 323.29, F.S.A., viz, "there shall be further exempted from the provisions of this Chapter and from the Commission jurisdiction and control persons operating motor vehicles within the limits of any city or town or the adjoining suburban territory, or . . . " Defendant Brack's answer recites that his transportation business falls within the exemption and therefore the Railroad and Public Utilities Commission has no jurisdiction over his business, because the arport is situated within the area of the adjoining suburban territory" to the City of Jacksonville and his business is regulated by the City of Jacksonville and not the Florida Railroad and Public Utilities Commission and he has complied with all charter and ordinance requirements of the City of Jacksonville and holds a permit from it and is operating his business under this permit. The motor vehicles operated for hire by the defendant over the territory are not taxicabs but are authorized by Section 323.29, supra.

The Florida Railroad and Public Utilities Commission and Airline Service, Inc., jointly applied to the Chancellor below for a temporary restraining order upon a sworn bill of complaint and supporting affidavits, and the defendant's answer and amendments thereto were considered as counter affidavits in opposition to the application. A temporary restraining order issued restraining the defendant from transporting persons and property for compensation to, from and between the Jacksonville Municipal Airport and points within the City of Jacksonville until a further order of the court. On petition for interlocutory certiorari we are requested to quash the temporary restraining order.

Paragraph 4 of the bill of complaint is viz: "The area and territory between the Municipal Airport, aforesaid, and the City of Jacksonville, Florida, and the operation of the defendant herein as above described are subject to the jurisdic-

tion of the Florida Railroad and Public Utilities Commission." The last two sentences of paragraph 3 of the defendant's answer are viz: "Defendant further alleges that he has complied with all the rules and regulations of the City Council of the City of Jacksonville with reference to for hire cars operated within the city limits of the City of Jacksonville. Defendant further says that the area from the city limits of Jacksonville to the Municipal Airport is approximately three-quarters of a mile and is suburban territory adjoining the said City of Jacksonville." It is admitted by the pleadings that the Municipal Airport is situated approximately three-quarters of a mile from the city limits of the City of Jacksonville and is situated, it is contended, within the adjoining suburban territory to the City of Jacksonville. The controlling question here is, does the Florida Railroad and Public Utilities Commission have jurisdiction and power to regulate the operation of transportation companies within the area, or is that power and authority by statute vested in the City of Jacksonville? The Chancellor below in entering the restraining order held as a matter of law that the power and authority was vested in the Florida Railroad and Public Utilities Commission and not in the City of Jacksonville.

The defendant-petitioner contends that his motor vehicle operation is exempted from the Commission's jurisdiction because of the following language found in Section 323.29, F.S.A., viz: "There shall be further exempted from this Chapter and from the Commission's jurisdiction and control persons operating motor vehicles within the corporate limits of any city or town or the 'adjoining suburban territory' . . . where such business of carriage is regulated by the body of such cities or towns." It is clear that the Legislature by the employment of this language intended that "adjoining suburban territory" should be considered and dealt with on the same basis, terms and conditions as the area located within the corporate limits of the municipality. These areas by statute are regulated by the legislative body of the cities or towns but not by the Railroad Commission.

We have not been favored with a statutory definition of "adjoining suburban territory," but Webster defines "suburb"

as "a district or region near or adjoining the boundaries of a city; a village or town so near as to be suitable for a place of residence for persons regularly employed in a city; in the plural, environs; confines; surrounding territory." Section 323.05, F.S.A., as amended in 1945 by Chapter 22,842, related to "for Hire" vehicles and authorized the Railroad Commission to hold hearings to determine what is suburban territory, and the language is viz:

" . . . The commission upon complaint or upon its own motion may hold public hearings to determine what is the *suburban territory* immediately adjacent to any municipality within the limits of the above definition, and at such hearing it shall be presumed that such *adjacent suburban territory* includes all that territory lying within a radius of five miles of the corporate limits of municipalities of ten thousand population or less, together with an additional mile for each additional fifty thousand population or fraction thereof of said municipality according to the last federal census." (Emphasis supplied).

Webster defines "adjoining" to mean "Joining to; contiguous; adjacent; as, an adjacent room". "Synonyms: adjacent; contiguous; near; neighboring; abutting; bordering." Where the charter of a water company authorized it to supply water for a certain city "and the town adjoining" and it appeared that the only municipal corporations whose borders touched the city were townships, the charter gives a right to supply such townships, since the word "adjoining" implies contact and excludes intervening space. Plainfiield-Union Water Co. v. Inhabitants of City of Plainfield, 84 N.J.L. 634, 87 Atl. 448.

The exemption from the jurisdiction of the Railroad Commission referred to in our statute by the phrase as "adjoining suburban territory" to the limits of any town "where such business is regulated by the legislative body" should be construed and given its usual, familiar and generally understood meaning as used in everyday life. It is clear that the statutory exemption, supra, extends from the limits of the City of Jacksonville in the general direction of the Municipal Airport, but we are unable to hold on this record that the Airport

is situated within the area referred to as "adjoining suburban territory", but on the point an adversary hearing should be had and thereafter a decree entered adjudicating the controverted issue. We hold that the phrase "the adjoining suburban territory" of any city or town "where such carriage is regulated by the legislative body," referred to in Section 323.29, F.S.A., as an exemption from the jurisdiction of the Railroad Commission involves a judicial question consisting of both law and fact to be heard and determined upon the merits of each controversy. In the light of our construction of the phrase "adjoining suburban territory," if the Chancellor below, after hearing testimony, concludes that the Municipal Airport is now situated within the area of "Adjoining suburban territory" to the incorporate limits of the City of Jacksonville, then the bill of complaint should be dismissed as the territory would not be within the jurisdiction of the Railroad and Public Utilities Commission, otherwise a permanent injunction should be entered on final hearing.

The majority opinion fails to consider Section 2 of Chapter 23912, Acts of 1947, Laws of Florida, and paragraph three of defendant-petitioner's answer filed March 30, 1948, in which a denial is made that he operated an auto transportation company within the meaning of Sections 323.01 and 323.02, F.S.A., but was operating motor vehicles limousines of a passenger carrying capacity of *seven* to *nine* passengers between the Municipal Airport and different points within the City of Jacksonville and the governing authorities of the City of Jacksonville granted him a permit or license No. 6139 for a period of one year after October 13, 1947, after a full compliance by the defendant with all charter and ordinance provisions of the City of Jacksonville and laws of Florida applicable thereto.

Section 323.01, F.S.A., defines an auto transportation company viz: "(7) 'Auto transportation company' means all persons, their lessees, trustees, or receivers, owning, controlling or managing any motor propelled vehicle not usually operated on or over fixed rails, used in the business of transporting persons or property for compensation over any public highways in this state and shall specifically include; ( (a), (b),

and (c) )." Section 323.02, F.S.A., provides that: "No auto transportation company shall operate any motor vehicle for the transportation of persons or proerty for compensation on any public highway in this state without first having obtained from railroad commission a certificate of public convenience and necessity or a permit as hereinafter provided."

Sections 323.01 and 323.02, F.S.A., must be weighed and considered in light of the pertinent provisions of Chapter 23912, Acts of 1947, because the defendant-petitioner's answer set out that he was operating motor vehicle limousines of a capacity of *seven* to *nine* passengers and applied to the City of Jacksonville for a license or permit so to do and obtained license or permit No. 6139 on October 13, 1947. (See Paragraph 3 of defendant's answer filed March 30, 1948.)

Paragraph 5 of the bill of complaint is viz:

"R. W. Brack, the defendant herein, as an auto transportation company as defined by Section 323.01, Florida Statutes, 1941, is now and has been engaged in unlawful common carrier passenger transportation for compensation between the Municipal Airport of the City of Jacksonville, and the City of Jacksonville in that he operates between fixed termini and on regular schedule between said points without proper authority therefor contrary to Sections 323.02 and 323.03, Florida Statutes, 1941."

The defendant's answer thereto is viz:

"5. Answering paragraph number five, this defendant denies that he is operating an auto transportation company within the meaning of the laws of the State of Florida and alleges that he is not operating from fixed termini and on regular schedules, but he is required to transport passengers to various places within the City of Jacksonville and to no particular place, and he is required to transport them after they arrived at the Municipal Airport, which on many occasions, is not at any fixed time."

The power and authority to regulate the transportation of passengers from the Municipal Airport to points within the City of Jacksonville "by motor vehicles having a capacity of *over seven* (7) passengers and operated over regular routes on fixed schedules" under Section 2 of Chapter 23912, Acts of

1947, was placed within the jurisdiction of the City of Jacksonville.

Chapter 22842, Acts of 1945, which amended Section 323.05, F.S.A., defines a taxi cab as follows:

". . . Provided, further, that the term 'taxi cab' as used herein shall be construed to include every motor vehicle of *seven* passenger capacity or less, subject to municipal license and regulation, engaged in the general transportation of persons 'for hire', not on regular schedule or between fixed termini or over regular routes, but over the streets generally of said municipality, with occasional trips beyond the boundaries thereof . . ."

Paragraph 3 of the bill of complaint alleges that the defendant was engaged in the transportation of passengers "for hire in motor vehicle limousines of a passenger capacity of from *seven* to *nine* passengers over the public highways of this state between the Jacksonville, Florida, Municipal Airport and the City of Jacksonville." It is admitted that Brack now holds license or permit No. 6139 issued to him by the City of Jacksonville on October 13, 1947. Likewise, it is not an issue that Brack failed to comply with the ordinance, charter provisions and the applicable state law of the City of Jacksonville in obtaining the permit. The Railroad Commission by statute can issue permits to taxi cab operators transporting passengers for hire by motor vehicles of seven passengers or less. It is alleged supra and admitted that Brack's limousines have a capacity of *seven* to *nine* passengers.

I think the restraining order complained of was erroneously entered and I therefore dissent.