RAWLS, Judge.
Appellee-plaintiff New Deal Cab Company brought its complaint against appellant-defendant William Bernard Langley, seeking a declaratory decree and permanent injunction restraining Langley from operating taxicabs on the streets of Jacksonville. Upon New Deal’s motion for summary final decree, the Chancellor entered a final declaratory decree in its favor and a permanent injunction against Langley, who has appealed.
New Deal is the holder of a permit from the City of Jacksonville and in accordance therewith operates a taxicab company within the City of Jacksonville. The gravamen of New Deal’s complaint is “* * * [Djefendant intended to operate, is operating, and unless restrained by this Court will continue to operate, a general taxicab business within the city limits of Jacksonville from his said headquarters outside said city limits, contrary to law. Said permit (Langley’s) applied for from the Florida Railroad and Public Utilities Commission, although intended to authorize only occasional unsolicited trips into the city to discharge passengers is being used and will, unless restrained by this court, continue to he used by defendant, as ostensible or pretended authority to pick up passengers in said city for transportation to destinations both within and without said city; but such use is and will be a mere subterfuge and an attempt by defendant to avoid the necessity of complying with the mandatory terms of the aforementioned sections of the said City Charter and Ordinances of Jacksonville * * (Emphasis supplied.)
Langley denied plaintiff’s complaint and affirmatively alleged that he holds a Master Permit as a taxicab operator from the State of Florida by and through the Florida Railroad and Public Utilities Commission, which permit allows him to transport passengers for hire on the highways of this state over irregular routes in motor vehicles of nine passengers or less, and pursuant to authority granted under said permit conducts a taxicab business in Duval County, Florida, whereby he transports passengers from points without the city limits of the incorporated areas of Duval County, Florida, into the incorporated areas of Duval County, Florida, and transports passengers from within the incorporated areas of Du-val County, Florida, to points without the incorporated areas of Duval County, Florida.
By his counterclaim Langley alleged that he was authorized to conduct a general taxicab business in the unincorporated area of Duval County, Florida, and to further transport passengers for hire from points, without the City of Jacksonville to points within the City of Jacksonville and from points within the City of Jacksonville to points without the City of Jacksonville.
The following pertinent interrogatories were propounded to Langley by New Deal:
“11. Have you or your agents or employees operated, or caused to be operated, on the streets or highways of Jacksonville any motor vehicle of seven passengers capacity or less excluding the driver, owned or controlled by you, while carrying passengers for hire or compensation ?
*791 “12. Have you or your agents or employees, in any motor vehicle of seven passengers capacity or less excluding the driver, owned or controlled by you, while on any street or highway of Jacksonville, accepted any passenger for hire or compensation to be carried to a destination outside the City of Jacksonville?
“13. Have you or your agents or employees transported passengers for hire or compensation in any motor vehicle of seven passengers capacity or less excluding the driver, owned or controlled by you from a location outside the City of Jacksonville into and for discharge within the City of J acksonville,?
“14. Have you or your agents or employees ever transported passengers for hire or compensation in any motor vehicle of seven passengers capacity or less excluding the driver, owned or controlled by you from a pick-up point within the city limits of Jacksonville and the suburban territory immediately adjacent thereto for transportation to and discharge at a location within the city limits of Jacksonville and the suburban territory immediately adjacent thereto ? ”
To each of the foregoing interrogatories Langley replied, “Yes”. Upon the foregoing issues and proof the Chancellor decreed as follows:
“1. This Court has jurisdiction of the parties to and the subject matter of this suit.
“2. Any operation by defendant, his agents, servants or employees, of taxicabs for hire on the streets and highways of the City of Jacksonville, Florida, without the City Permit required by law as aforesaid is unauthorized and unlawful.
“3. The defendant, his agents, servants and employees are permanently restrained and prohibited and perpetually enjoined from:
“a. Engaging in the taxicab business in Jacksonville, Florida, or in any manner operating taxicabs for hire, on the streets and highways of Jacksonville, Florida without a valid Permit from said City to do so.
“b. Soliciting, by word of mouth, signs, advertising or otherwise, passengers for transportation within the City of Jacksonville, Florida, either from a point outside said City to a point inside said City, or from a point inside said City to a point outside said City, or from a point inside said City to another point inside said City.
“c. Transporting passengers for hire into the City of Jacksonville from any pickup point outside of said City.
“d. Transporting passengers for hire from any pick-up point within the City of Jacksonville either for transportation to a point within said City or to a point outside said City.
“e. Transporting passengers for hire within the city limits of the City of Jacksonville whether said passengers have been picked up within or outside the City of Jacksonville.
“f. Picking up passengers for hire within the city limits of the City of Jacksonville, Florida, either for transportation to a point within said City or to a point outside said City.
“g. Allowing any of his taxicabs to move in said City while carrying passengers for hire, whether such passengers have been picked up within said City or outside said City.
“h. Cruising on, or along, or parking upon the streets and highways of said City for the purpose of, or with intent to solicit passengers or take on passengers for transportation for hire.
“4. The Court retains jurisdiction of this cause for the purpose of enforcing the provisions of this decree as may be necessary, by contempt proceedings or otherwise.”
The crucial assignment of error posed by Langley is: “That the court erred in and by *792 said final decree in declaring that any operation by defendant, his agents, servants or employees of taxicabs for hire on the streets and highways without the city permit required by the Jacksonville City Ordinances is unlawful.” We find that this assignment of error has merit.
New Deal contends that even though a taxicab operator procured a Master Permit from the Railroad & Public Utilities Commission, he must also obtain a permit from Jacksonville, and that without a Jacksonville permit any operation of taxicabs in the city is unlawful and should be enjoined. Langley takes the position that as holder of a Master Permit he is entitled to operate his taxicabs in the City of Jacksonville at any time so long as he does not pick up and discharge passengers within the city limits of Jacksonville. We find that neither party’s position can be fully sustained.
The question of the appropriate public authority to regulate auto transportation companies as defined in Chapter 323, Florida Statutes, F.S.A., has been presented to the Supreme Court on several occasions and has involved the construction of salient portions of said chapter.
In Brack v. Carter[1] (hereinafter referred to as the First Brack case) it is reflected that Brack operated an Airport Limousine Service under a license issued to him by the City of Jacksonville between the municipal airport of the City of Jacksonville and transported passengers, baggage and personnel of certain airlines to various points in the City of Jacksonville, and from various points in Jacksonville to the airport. The Commission brought a bill in equity against Brack seeking a permanent injunction of his transportation service on the theory that it violated Section 323.01 and Section 323.22, Florida Statutes, F.S.A. Brack defended upon the ground that his transportation service was exempt from the jurisdiction of the Commission under Section 323.29, Florida Statutes, 1941.[2] In holding that said section did not exempt Brack’s transportation service from the Commission, the court stated on page 90:
“So it is we construe said exemption to mean primary operation within any city or town and casual or incidental operation within adjoining suburban territory.”
And again considering the question of exemption under Section 323.29, Rlorida Statutes, F.S.A., the Supreme Court reiterated the foregoing doctrine in State ex rel. City of Miami Beach v. Carter.[3] Therefore, in defining the jurisdiction of a municipality over an auto transportation company and construing the exemption from the Commission’s jurisdiction, the Supreme Court has clearly set forth the test of a primary operation within the city and casual or incidental operation within adjoining suburban territory. It is logical that the converse of such rule should be applied in the instant cause; that is: whether or not Langley’s primary operation was within the suburban territory and casual or only incidental operation within the City of Jacksonville.
The sole proof offered in support of the final decree entered in response to New Deal’s motion for summary final decree was Langley’s answer to New Deal’s interrogatories which taken alone, are entirely inadequate to support the Chancellor’s findings. No proof was offered as to New Deal’s allegation that Langley’s operation was a subterfuge or that he was conducting a taxicab business within the City of Jaclc- *793 sonville. It is axiomatic that when plaintiff moves for a summary final decree he has the burden of proving each material allegation of his complaint prior to being entitled to said decree as a matter of law, and where there is an absence of proof of such allegations as is disclosed in this record, then the summary final decree must be set aside,[4] even though opposing party does not file counter affidavits or other proof.
New Deal insists that the Legislature of Florida has determined that control of all taxicab operations within the City of Jacksonville is vested in the City Commission and cites Acts of 1943, Ch. 22339 as its authority. In view of the decisions in the first Brack case and in State ex rel. City of Miami Beach v. Carter, supra, it is our conclusion that this statute must be construed as granting to the City of Jacksonville exclusive authority of regulating taxicabs within the City of Jacksonville whose primary carriage is wholly within the city and only casual or incidental operation in the adjoining suburban territory. To sustain New Deal’s contention would in effect be decreeing that any taxicab with a Master Permit operating in this State could not cross a municipal boundary unless is was licensed by the municipality. We do not find such an intention promulgated by the legislature or by the case law on the subject.
 The next contention of New Deal is that by the provisions of Section 323.05 (3) [5] and 323.29(1), the legislature hae withdrawn the adjoining suburban territory from said Commission’s jurisdiction where such business of carriage is regulated by the legislative body of such cities and towns. After asserting this contention, New Deal candidly stated in its brief: “It must be admitted that the Supreme Court of Florida seems on two occasions (in two fairly old cases) to have overlooked certain parts of Chapter 323.” We note that in the majority opinion of the first Brack opinion that the essential portions of Section 329.29 are set out and that Mr. Justice Chapman, in his dissent therein, sets out the provisions of Section 323.05, Florida Statutes, F.S.A. The inescapable conclusion is .that the Supreme Court has carefully weighed this question and has enunciated an interpretation of the applicable statutes contrary to New Deal’s position. It is elementary that in construing statutes of this' State, this Court is bound by the prior decisions of our highest court and we are not at liberty to depart therefrom.
Finally, it is New Deal’s position that the decision in Pensacola v. King,[6] and the “second Brack”[7] case clearly sustain its contention that the City of Jacksonville has exclusive jurisdiction to regulate taxicabs operating within its boundaries. A review of the statute involved reveals that tha legislature granted to the City of Pensacola specific authority to regulate firms, corporations and auto transportation companies op *794 erating motor vehicles, other than taxicabs, engaged in the business of transporting passengers within the corporate limits and in the adjoining territory. In holding this Special Act valid the Court stated:
“The [Special] act under review provides a field of operations for both the City of Pensacola and the Commission. It vested in the city authority to regulate an intra area service embracing the city and suburban territory as defined and reserved to the Commission power to regulate the intra-mural service whether to or from the area, including the power to determine the bounds of the adjoining suburban territory. There is a clear line of demarcation between the jurisdiction of the city and the Commission and no reason is shown why both should not operate harmoniously * * * [T]he problem should be resolved so as to allow each the field of operation designed for it.”
The decision in that case is clearly bottomed upon the special legislative authority granted to the City of Pensacola to regulate the motor vehicles defined in the described adjoining suburban territory. Such is not the case in the instant cause.
The sole legislative authority granted to the City of Jacksonville to regulate any auto transportation company in the adjoining suburban territory is found in Chapter 25922, Laws of Florida, 1949.[8] This Chapter confines such authority to the regulation of specific contract carriers operating between city owned property outside the corporate limits to points within the corporate limits. The legislative grant in no instance attempts to vest in the City of Jacksonville authority to regulate other carriers, such as. taxicabs, operating principally in the adjoining suburban territory and, therefore, left this field of operations in the hands of the Commission.[9]
Having reached the conclusion that the Commission has jurisdiction in regulating taxicabs operating principally in the adjoining suburban territory of the City of Jacksonville, the following query is posed: Does Langley operate principally in the adjoining suburban territory of the City of Jacksonville with a casual or incidental operation in the City of Jacksonville? or posed in another fashion: Is the operation of Langley a mere subterfuge and an attempt by Langley to avoid complying with the terms of the ordinances of the City of Jacksonville? To answer these queries it will be necessary for the parties to adduce competent evidence upon which the Chancellor can base his findings, which has not been done at this stage of the cause.
Reversed with directions for the Chancellor to take further proceedings in accordance with this opinion.
CARROLL, DONALD K., C. J., and STURGIS, J., concur.

. Brack v. Carter, 160 Fla. 845, 37 So.2d 89 (1948).

. “ * * * There shall be further exempted from the provisions of this chapter and from commission jurisdiction and control, persons operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory * * * where such business of carriage is regulated by the legislative body of such cities or towns.”

. State ex rel. City of Miami Beach v. Carter, 39 So.2d 552 (Fla.1949).

. Farrey v. Bettendorf, 96 So.2d 889 (Fla.1957); Byrd v. Booth, 110 So.2d 37 (Fla.App.1959).

. F.S. 323.05(3), F.S.A.: “No such permit shall be required in respect to the operation. of ‘for hire’ motor vehicles wholly within the limits of any incorporated city or town and the suburban territory immediately adjacent thereto, when such ‘for hire’ carriage is regulated by the legislative body of such city or town. The ordinances, rules or regulations adopted by the legislative body of such city or town shall be applicable to ‘for hire’ motor vehicles within the suburban territory immediately adjacent thereto and such cities and towns shall have police power to enforce such ordinances, rules or regulations in such suburban territory immediately adjacent thereto, over the roads and highways in such territory to the same extent as if the territory was within the corporate limits of such towns or cities.”

. City of Pensacola v. King, 47 So.2d 317 (Fla.1950).

. The second Brack decision, 47 So.2d 896 (Fla.1950) was rendered after enactment by the legislature of Chapter 25922 (1949), which granted the specific authority to the City of Jacksonville that the Supreme Court held was lacking in the First Brack opinion.

. “Section 2. Whenever the City of Jacksonville, acting by and through its City Commission has entered into a written contract whereby any person owning or operating motor vehicles for hire has been given the right to enter any airport, zoo, utility or public property owned by the City of Jacksonville and located outside of the corporate limits of the City of Jacksonville but within Duval County, and to occupy and use space thereon as a terminus for such motor vehicles for hire, the City of Jacksonville acting by and through its City Commission shall have full police power and exclusive jurisdiction, control and regulation of such motor vehicles for hire, and shall have full police power and exclusive jurisdiction, control and regulation of the operation of such motor vehicles for hire over the public highways upon which such motor vehicles for hire are permitted to operate between a terminus in the City of Jacksonville and the terminus on such property owned by the City of Jacksonville.”

. City of Pensacola v. King, supra.