MAGER, Judge.
This is an interlocutory appeal by the City of Fort Lauderdale from an order enjoining the City from interfering with the franchise agreement existing between Taxi, Inc., a Florida corporation, and Broward County. The franchise in question pertains to the operation of a taxicab service concession for the purpose of transporting airline passengers from the terminal building at the airport to other points within Broward County. The City also assigns as error an order entered by the trial court permitting Taxi, Inc., the plaintiff below, to amend its complaint. In this connection it is important to point out that in an interlocutory appeal the appellate court is precluded from considering the correctness of any other interlocutory order or ruling not described or designated in the notice of appeal. Local 1248 IAM v. St. Regis Paper Co., Fla.App.1960, 125 So.2d 337.
Since the notice of interlocutory appeal designates only the order of October 5, 1970, wherein the trial court has entered a temporary injunction against the City, we are precluded on this appeal from considering the correctness of the trial court’s order permitting the complaint to be amended or any other order referred to in the assignments of error.
Confining our review to the order granting a temporary injunction, it is incumbent upon the appellants to show a clear abuse of discretion to upset the chancellor’s ruling granting the temporary injunction. AAA Auto Leasing, Inc. v. Morse Taxi & Baggage Transfer, Inc., Fla.App.1967, 204 So.2d 902. In examining the record in the light of this principle we find we are of the opinion that the appellant has not met this burden, and we find no error in the discretion exercised by the chancellor.
We have reviewed the provisions of Chapter 65-1003, which the City alleges not to have been complied with thereby rendering void a Certificate of Public Convenience and Necessity issued by the Public Service Commission. The certificate authorized Taxi, Inc. “To transport *469 passengers with or without baggage under contract with the Board of County Commissioners, Broward County, Florida * * from and between the Airline Passenger Terminal Building at Fort Lauderdale-Hollywood International Airport and such other points on the Airport as may be subsequently designated by the County and all points and places in Broward County, Florida”. We are of the view that the contentions of the City in this regard are without merit. In ascertaining the legislative intent in the enactment of Chapter -65 — 1003, it is appropriate for the courts to consider the history of the enactment as well as the object and purpose to be attained. Ideal Farms Drainage Dist. v. Certain Lands, 1944, 154 Fla. 554, 19 So.2d 234; 30 Fla.Jur., Statutes, §§ 95-100. Chapter 65-1003 is what is commonly referred to as a “population act” which by the very nature of the population brackets affects Dade and Broward Counties. Section 1 provides in part:
“ * * * The board of county commissioners in any county in the state having a population of * * * (figures omitted); which said counties own and operate an airport, shall have the right, power and authority to enter into contracts with one (1) or more automobile transportation companies for the transportation of passengers for hire between such airport or airports and all points, places and areas within such county, and the Florida public utilities commission shall thereupon, as a matter of right and without a hearing, issue to every such automobile transportation company a certificate of public convenience and necessity as a contract carrier without charter rights, which shall be valid during the term of said contract or contracts authorizing such automobile transportation company to transport passengers for hire over the roads, streets and highways of such county between such airport and all points, places and areas within such county, provided, however, nothing herein shall release such automobile company from otherwise complying with the provisions of chapter 323, Florida Statutes.”
The language of this act would not suggest or infer the necessity of joint action by the two counties of Dade and Broward either with each other or with a transportation company which the City asserts is necessary under the terms thereof. To do so would ascribe to this statute an absurd or unreasonable consequence certainly not intended by the legislature (City of St. Petersburg v. Siebold, Fla.1950, 48 So.2d 291). Additionally, however, a review of the decision in S. & J. Transportation Inc. v. Gordon, Fla.1965, 176 So.2d 69, makes it readily apparent that Chapter 65-1003 was enacted for the purpose of correcting certain defects which the Supreme Court found to exist. In the Gordon case the court invalidated Chapter 63-964, Laws of 1963, an act substantially similar in wording to Chapter 65-1003, except that the former act related “only to Dade County”. The Supreme Court had been presented with a series of attacks by taxicab companies on the actions of the Dade County Port Authority in granting contracts to furnish ground transportation to and from Miami International Airport. The Supreme Court pointed out that in a series of cases prior to Gordon, Dade County was required under the provisions of Section 331.15(2) F.S.A. to fix “designated points” within the county in any contract for ground transportation of passengers. In Gordon, the Supreme Court observed that in order to overcome the effect of these prior decisions the legislature enacted Chapter 63-964, a population act relating to Dade County, authorizing Dade County to contract for ground transportation of passengers between the airport and “all points, places and areas within such county”. In holding that Chapter 63-964 was invalid the court cited subsections 5 and 6, Section 11, Article VIII, Constitution of 1885, F.S.A. and concluded:
“ * * * As we interpret these subsections they mean that the Legislature may not lawfully adopt any act which relates only to Dade County. Only acts which *470 apply to Dade County and one or more counties may be lawfully adopted. We so held in Chase v. Cowart, Fla.1958, 102 So.2d 147, 150.” (Emphasis added.)
As a result of the Supreme Court’s decision in the Gordon case the 1965 legislature seemingly enacted Chapter 65-1003 which is substantially, a rewrite of Chapter 63-964 except that Broward County has now been included to comply with the aforementioned constitutional requisites. Chapter 65-1003 now applies to “Dade and one or more counties”, and we therefore conclude that either Dade or Broward can separately and independently exercise the authority prescribed therein. Additionally, we conclude that the Florida Public Service Commission was required to issue Broward County a certificate of public convenience and necessity in accordance with Chapter 65-1003.
Whether or not the provisions of Chapter 65-1003 and the certificate issued thereunder have the effect of dispensing with the necessity of complying with Fort Lauderdale’s ordinance 42-2 depends largely upon the construction of F.S. Section 323.29(1), F.S.A., which construction necessitates the taking of additional evidence before that question can be considered in this court. The provisions of Chapter 65-1003 as well as the certificate issued thereunder require compliance “with the provisions of Chapter 323, Florida Statutes”. The provisions of Section 323.29(1) apparently remove from the Public Service Commission’s jurisdiction and control, vesting such jurisdiction in a municipality, “persons operating motor vehicles within the corporate limits of any city or town or the adjoining suburban territory or between cities and towns whose boundaries adjoin, where such business of carriage is regulated by the legislative body of such cities or towns”. See Sections 323.29(1) and 323.05(3). Therefore, in determining whether Taxi, Inc. is subject to the exclusive jurisdiction of the Florida Public Service Commission or to the jurisdiction of the City of Fort Lauderdale in accordance with Ordinance 42-2 the test set forth in Langley v. New Deal Cab Company, Fla.App.1962, 138 So.2d 789, must be applied. In Langley the First District observed in part, at 792:
“ * * * [I]n defining the juridiction of a municipality over an auto transportation company and construing the exemption from the Commission’s jurisdiction, the Supreme Court has clearly set forth the test of a primary operation within the city and casual or incidental operation within adjoining suburban territory. It is logical that the converse of such rule should be applied in the instant cause; that is: whether or not Langley’s primary operation was within the suburban territory and casual or only incidental operation within the City of Jacksonville.”
The concluding comments by the First District in Langley are dispositive of this issue :
“Having reached the conclusion that the Commission has jurisdiction in regulating taxicabs operating principally in the adjoining suburban territory of the City of Jacksonville, the following query is posed: Does Langley operate principally in the adjoining suburban territory of the City of Jacksonville with a casual or incidental operation in the City of Jacksonville? or posed in another fashion: Is the operation of Langley a mere subterfuge and an attempt by Langley to avoid complying with the terms of the ordinances of the City of Jacksonville? To answer these queries it will be necessary for the parties to adduce competent evidence upon which the Chancellor can base his findings, which has not been done at this stage of the cause.” (138 So.2d 794).
*471 The decision of the trial court is affirmed, with directions to entertain such proceedings as are not inconsistent with this opinion.
CROSS, C. J., and OWEN, J., concur.