176 So.2d 69 (1965)
S & J TRANSPORTATION, INC., a Florida corporation, et al., Appellants,
v.
Alexander S. GORDON, as Chairman Dade County Port Authority, et al., Appellees.
Eugene SHOOP, S & J Transportation, Inc., a Florida corporation, et al., Appellants,
v.
Wilbur C. KING, Chairman Florida Railroad and Public Utilities Commission, et al., Appellees.
Nos. 33437, 33437-A.
Supreme Court of Florida.
May 19, 1965.
Rehearing Denied June 28, 1965.
Stanley Epstein, of Kastenbaum, Mamber, Gopman & Epstein, Miami Beach, for appellants.
James F. Eckhart and Thomas G. Spicer, Miami, for Alexander S. Gordon, as Chairman, et al., as and constituting Board of County Commissioners of Dade County, Florida, acting as Dade County Port Authority.
Lewis W. Petteway and Thomas F. Woods, Tallahassee, for Florida Public Utilities Commission.
Frates, Fay & Floyd, Miami, for Red Top Sedan Service.
O'CONNELL, Justice.
This is another in a series of attacks by taxicab companies on actions of the Dade County Port Authority granting to limousine companies contracts to furnish ground transportation to and from the Miami International Airport pursuant to Section 331.15(2), F.S.A.
*70 In essence the taxicab companies wish to restrict the limousine companies to transportation of passengers between the airport and designated points, as opposed to all points, in Dade County. In previous litigation they have been successful in sustaining this position. Phil's Yellow Taxi Company of Miami Springs v. Carter, Fla. 1961, 134 So.2d 230, S & J Transportation, Inc. v. McGahey, Fla.App. 1961, 135 So.2d 442; and Red Top Sedan Service, Inc. v. S & J Transportation, Inc., Fla.App. 1963, 150 So.2d 450.
To enable the Port Authority and the limousine companies to overcome the effect of the decisions above cited the Legislature enacted Chapter 63-964, Laws of 1963. This statute provides that the county commissioners in any county with a population greater than 900,000 persons and owning and operating an airport may contract for ground transportation of passengers between such airport and "all points, places and areas within such county." This statute also provides that upon execution of such a contract the Florida Railroad and Public Utilities Commission shall automatically issue a certificate of public convenience and necessity to the carriers given such a contract by the county.
The net change affected by passage of the statute is this. In counties having more than 900,000 population, the county may contract for ground transportation, and the Utilities Commission must issue a certificate or certificates therefor, authorizing the contract carriers to transport passengers "between such airport or airports and all points, places and areas within such county." Chapter 63-964. In counties having less than 900,000 population, on the other hand, such contracts and certificates may authorize transportation of passengers only "between such airport or airports and designated points within such county." Section 331.15(2), F.S. 1963, F.S.A.
Following enactment of Chapter 63-964 the Port Authority amended its contract with the limousine companies. Then the taxicab companies filed a petition in that cause which resulted in the decision reported as Red Top Sedan Service, Inc. v. S & J Transportation, Inc., Fla.App. 1963, 150 So.2d 450. In this petition the taxicab companies sought to have Chapter 63-964 declared invalid, the transportation contract held void, and the operations of the limousine companies limited to transportation to and from designated points and the airport.
The circuit court denied the petition. In its order of denial the court stated that the plaintiffs had failed to show that Chapter 63-964 is unconstitutional. This interlocutory appeal followed.
The appellants taxicab companies contend that the subject statute is invalid for two reasons. First, they contend that it violates the provisions of Section 11, Article VIII, Fla. Const. F.S.A. Second, they argue that it is repugnant to Section 21, Article III, Fla. Const.
We think that appellants' first point is well taken. This makes it unnecessary to deal with the second point.
Both subsections (5) and (6), Section 11, Article VIII prescribe that this section shall not limit, or be construed to limit, the power of the Legislature to enact "* * * general laws which shall relate to Dade County and any other one or more counties * * *" in the state. As we interpret these subsections they mean that the Legislature may not lawfully adopt any act which relates only to Dade County. Only acts which apply to Dade County and one or more counties may be lawfully adopted. We so held in Chase v. Cowart, Fla. 1958, 102 So.2d 147, 150.
The appellees argue that the subject matter of Chapter 63-964 is not a local affair within the powers delegated to the electors of Dade County by Section 11. They take the position that the subject matter is transportation, a matter within the jurisdiction of the Utilities Commission and over which the Legislature retains full power to the exclusion *71 of Dade County. They reason that if Chapter 63-964 is held invalid as invading the powers delegated to the people and government of Dade County by Section 11, then the electors of Dade County could by its charter legislate in this field. They also argue that Subsection (7), Section 11, Article VIII retains in the Utilities Commission the power to take local action in Dade County and in the Legislature the power to increase or decrease the power of the Commission in Dade County.
It does not follow that a holding that Chapter 63-964 is invalid would leave Dade County free to legislate in this field. In any event, we do not feel that the act is invalid because it invades the power given the people of Dade by Section 11, Article VIII. Rather, it is invalid because it violates the limitation that the Legislature shall not lawfully pass any act which relates only to Dade County. The fact that the act in question relates to public transportation does not change this restriction on the legislative power.
As we understand it Section 11 was intended to: (1) give the electors of Dade County home rule or autonomy in affairs pertaining solely to Dade County; (2) retain the supremacy of the constitution and valid general laws (applicable to Dade and one or more counties), except as specifically provided there; and (3) retain in the Legislature the full authority to enact general laws affecting Dade and one or more counties. A reasonable construction of this constitutional scheme is that the Legislature no longer has authority to enact laws which relate only to Dade County. This is true regardless of the subject matter, the manner of passage or whether according to previous decisions of this court they would be classified as valid general laws. If this section was construed otherwise the Legislature would still have the power to enact laws applicable only to Dade County on a population or other reasonable classification basis on a myriad of subjects and completely destroy the intended autonomy in local affairs.
This means that as to matters which affect only Dade County, and are not the subject of constitutional provisions or valid general acts pertaining to Dade County and one or more other counties, the electors of Dade County may govern themselves autonomously and differently than the people of the other counties of the state. But it also means that when the Legislature exercises its power it may not treat Dade County differently than it treats at least one other county in the state. The limitation that legislative action affecting Dade County must also affect one or more other counties was necessary to insure that the Legislature would not, after adoption of the home rule charter, continue to have the power to enact laws, general, local or special, relating only to Dade County.
This limitation in no wise prohibits the Legislature from enacting laws relating to Dade County on any subject not specifically removed from its power by Section 11, Article VIII. All that it requires is that such laws not relate solely to or affect only Dade County.
Any doubt that the provisions of Section 11, are designed to prevent the Legislature from adopting laws pertaining only to Dade County is dispelled by Subsection (9) thereof. This subsection expresses the intent of the Legislature and the electors of Florida in adopting Section 11 to be "* * that the provisions of this Constitution and general laws which shall relate to Dade County and any other one or more counties * * * shall be the supreme law in Dade County."
The phraseology quoted above from Subsection (9) and that found in Subsections (5) and (6) do not directly prohibit the enactment of laws applicable only to Dade County. But the words employed effectively do so. The well-recognized rule of construction found in the maxim "expressio unius est exclusio alterius" requires that where one method or means of exercising a power is prescribed in a constitution it excludes its exercise in other ways. Thus here the provisions which state that *72 the power of the Legislature to enact general laws relating to Dade and one or more counties is not limited require the construction that the power to enact laws affecting Dade but no other counties is limited. Likewise, the provisions stating that general laws relating to Dade and any other one or more counties shall be supreme in Dade County impels the construction that laws which relate only to Dade County shall not be supreme therein.
Appellees seem to be of the view that the limitation on legislative power is applicable only to those matters and things over which the electors are specifically given home rule under the provisions of Section 11.
If this were the intent of the framers and adopters of the Amendment it could have been easily stated. But the fact is that the wording of the document does not do so. It does not anywhere indicate that the laws which must relate to Dade and at least one other county are limited only to laws affecting those matters specifically mentioned in Subsections (1) through (4), Section 11.
It is true, as appellees contend, that Subsection (7), Section 11, is intended to insure that the power and jurisdiction of the Utilities Commission and other state agencies are not impaired by the home rule charter. This is consistent with the prescription found in Subsection (9) that, except as specifically provided, the constitution and general laws of the state, relating to Dade and any other one or more counties, shall be the supreme law in Dade County. But we can not agree that this subsection was intended to, or does, retain in the Legislature the power to enact a law which affects the power or jurisdiction of such a state agency only in Dade County. Subsections (5), (6) and (9) all indicate a contrary intent. Moreover, the latter part of subsection (7) provides that said state agencies "shall have the same powers and duties in Dade County as shall be conferred upon them in regard to other counties." Construed with the other pertinent subsections this quoted provision must reasonably be held to mean that such agencies may exercise in Dade only those powers which are exercised in at least one other county.
It is not disputed that Chapter 63-964 relates only to Dade County. Therefore it must be held to be invalid because it violates the limitations of Section 11, Article VIII.
Assuming that all other constitutional requirements pertaining to legislation are met, there is no doubt that the Legislature could lawfully enact a statute accomplishing the end sought in Chapter 63-964 if the act were made applicable to Dade County and at least one other county.
For the reasons above expressed the order appealed from is reversed and the cause remanded for further proceedings.
DREW, C.J., THOMAS and CALDWELL, JJ., and McCORD, Circuit Judge, concur.
ROBERTS and ERVIN, JJ., concur specially with opinion.
ROBERTS, Justice (concurring specially).
I concur in the judgment of reversal. However, by way of caveat, this does not in my opinion impair the power of the Commission to designate a reasonable number of discharge points in the affected area under the authority of Section 331.15(2), Florida Statutes 1963, F.S.A., which provides:
"The board of county commissioners of every county owning and operating an airport shall have the right, power and authority to enter into contracts with one or more motor carriers for the transportation of passengers for hire between such airport or airports and designated points within such county, and the Florida public utilities *73 commission shall thereupon, and as a matter of right and without a hearing, issue to every such motor carrier a certificate of public convenience and necessity as a contract carrier without charter rights, which shall be valid during the term of said contract or contracts authorizing such motor carrier to transport passengers for hire over the roads, streets and highways of such county between such airport and the point or points designated in such contract or contracts, provided however nothing herein shall release such motor carrier from otherwise complying with the provisions of chapter 323."
Also compare Section 11(7), Article VIII, Constitution of Florida, (the Metro amendment) which provides:
"Nothing in this section shall be construed to limit or restrict the power and jurisdiction of the Railroad and Public Utilities Commission or of any other state agency, bureau or commission now or hereafter provided for in this Constitution or by general law and said state agencies, bureaus and commissions shall have the same powers in Dade County as shall be conferred upon them in regard to other counties."
DREW, C.J., concurs.
ERVIN, Justice (concurring specially).
I concur in the foregoing opinion because I think the statute involved is local legislation. However, I believe the Legislature has the power to legislate by general law concerning all state subjects which may have impact in Dade County without including another county or counties in the legislation. Properly construed, I do not believe Section 11 of Article VIII of the State Constitution prohibits the state legislature from passing any laws save those which prior to the adoption of said Section would have been deemed special or local acts, and this would include population acts of local application which were in truth and in fact local acts. I think the framers of the home rule amendment, by using language requiring the inclusion of another county along with Dade County in an act in order that it would be considered a general law, intended to strongly emphasize and insure that population acts pertaining only to Dade County without rational classification and general application should not be passed. This language was designed to preclude circumvention by the Legislature of the authority of the Metro Commissioners to legislate or pass ordinances as to all local subjects. Conversely, it was not intended by such provision requiring the inclusion of another county together with Dade County that the Metro Commissioners would assume the power of the state legislature in respect to state subjects having impact in Dade County. For example, I do not believe such provision precludes the Legislature from enacting general laws relating to a state road in Dade County, state projects therein such as Interama, the state judiciary located in Dade County, state institution buildings therein, state lands and waters therein, state agency operations therein, and similar state subjects having impact in Dade County.