O’CONNELL, Justice.
This is an appeal from a final decree in a bond validation proceeding. Appellants contend that the chancellor erred in validating the issue of these bonds for two reasons: (1) the appellee-town submitted no evidence that a majority of the freeholder residents qualified to vote participated in the referendum, as required by Article IX, Sec. 6 of the Florida Constitution, F.S.A. and by F.S. Sec. 169.01, F.S.A.; and (2) the town submitted no evidence concerning the amount of assessed valuation of real and personal property in the municipality, as *459 required for the computation of the debt limit imposed by F.S. Sec. 169.04, F.S.A.
The town admits that evidence concerning the proportion of qualified freehold electors participating in the election was inadvertently omitted in the proceeding below and that the issue cannot be approved without such showing. The town therefore requests this court to remand the cause to permit the chancellor to receive the needed evidence.
On the theory that the second point raised by the appellant was not ripe for our consideration because not passed upon by the chancellor, in our first opinion we remanded the cause for further proceedings necessary to settle the issues properly presented to the chancellor. However, upon further consideration pursuant to the town’s petition for rehearing, we have now concluded that the appellant’s second point is properly before us. It was clearly raised by both the state attorney and the intervening appellants, and must be held to have been passed upon by that portion of the final decree reading,
“12. Neither the Answer of the State Attorney for and on behalf of the State of Florida, nor the taxpayers’ applications for intervention herein show any cause why the prayer of the Petitioner should not be granted or disclose any irregularity or illegality in the proceedings set forth in said Petition; and the objections contained therein be and the same are hereby overruled and dismissed.”
As to appellant’s second point — that relating to the debt limitation of Sec. 169.04— the town states that evidence concerning assessed valuation was properly and purposefully omitted for the reason that the debt limitation provision of Sec. 169.04 does not apply to this issue of bonds. It seeks to support this conclusion on three alternate theories: (1) that the bond issue is authorized by the town charter which was adopted under the Dade County Home Rule Charter, and that general law does not apply; (2) that even if it is assumed that the subject transaction comes under general law, authorization could as well be found in Sec. 169.02, which contains no debt limitation, as under Sec. 169.04; and (3) that even if Sec. 169.04 is assumed to be applicable, the town should be held to come within the exclusion from the section of “towns which have special charters from the legislature.”
Appellees’ argument on the first theory appears to be that subparagraph (1) (e) and paragraph (5), Article VIII, Section 11, Florida Constitution (the Dade County Home Rule amendment to the Florida Constitution), Sec. 5.02 of the Dade County Charter, and the 1962 charter of the town, adopted pursuant to the Dade County Charter, all require the conclusion that this bond issue is not subject to the debt limitation provision of general law. We disagree.
Appellees acknowledge that paragraph (5) of Article VIII, Section 11, Fla.Const., is the operative limitation on the power of Dade County municipalities in the context of the present problem. That paragraph expressly provides that neither the home rule charter, nor any ordinance enacted in pursuance of that charter, nor the charter of any municipality in Dade County shall conflict with the Florida Constitution or with general law (as defined therein) applicable at the time of the adoption of the home rule amendment, “except as expressly authorized” therein.
There is no doubt that Sec. 169.04 applied to Dade County and at least one other county at the time of the adoption of the home rule amendment and therefore comes within that amendment’s definition of general law that will continue to apply, absent express authorization to the contrary. Therefore, the question becomes that of ascertaining whether any other provision of the home rule amendment expressly authorizes departures from the requirements of that section.
*460 The town argues that this authorization is found in subparagraph (1) (e), Article VIII, Section 11, Fla.Const., authorizing the inclusion in the home rule charter of a provision prescribing
“a method for establishing new municipal corporations, special taxing districts, and other governmental units in Dade County from time to time and provide for their government and prescribe their jurisdiction and powers.”
Wc see no express authorization in this provision that could be taken as immunizing the home rule charter, ordinances enacted in pursuance thereof, or charters of Dade County municipalities from the operation of the constitution or of general law. Rather, we see only a general authorization to provide for the establishment of municipalities which would be subject to the constitution and valid general laws then in existence or thereafter passed.
 There being no express authorization in the home rule amendment to depart from the requirements of the constitution or of general law, the provision of section S.02 of the Home Rule Charter, however positively worded, must be equally ineffective to this end. If the provisions of the constitution and of general law are applicable by the terms of the home rule amendment, it is certainly beyond the authority of the county commission or the people of Dade County to grant dispensation therefrom.
Appellees appear to find comfort from our opinion in Chase v. Cowart, Fla.1958, 102 So.2d 147, 153, where we said:
“We find it crystal clear that the words ‘except as expressly authorized’ or ‘provided’ as found in subsections (5) and (9) relates directly to the specific grants of power contained in the various sub-sections of subsection (1).”
To the contrary, the quoted language supports the view taken herein — i. e., that the provisions of the constitution or of general law apply unless there is express authorization to the contrary in one of the specific grants of subsection (1) of the home rule amendment.
 In its brief the town urges that Sec. 169.04 “controls only if some provision of the Home Rule Amendment so requires.” The opposite is true. The meaning of subsection (5) of that amendment is clearly that existing general law applies, absent some express provision of the amendment to the contrary. Moreover, since Sec. 169.04 is a valid general law as defined by the home rule amendment, there is no reason to distinguish between its applicability and that of the constitution. Both are made the supreme law by the amendment and both enjoy the same dignity so far as their applicability to Dade County municipalities is concerned. Appellees readily acknowledge the applicability of Article IX, Section 6 of the Florida Constitution. The provisions of general law, including Sec. 169.04, are no less applicable.
Under its second theory, the town argues that even assuming general law to be applicable this transaction can be viewed as authorized by Sec. 169.02, which imposes no debt limit, rather than by Sec. 169.04. No extended study of the legislative history of these two sections is required to reveal the fallacy in this argument. The basic statute relating to the establishment of municipalities was originally enacted in 1869 as chapter 1688. Sec. 18 of that act generally included what now constitutes Sections 169.02 and 169.05, plus an express provision that the amount of the debt to be incurred was within the discretion of the mayor and city council.
Chapter 3163, Laws of Florida, 1879, amended the act of 1869 by imposing a debt limit of 8 percent of the assessed valuation. Chapter 3476, Laws of Florida, 1883 amended the act of 1879 to reduce the debt limit to 5 percent of the assessed valuation. It is notable that in the compilation contained in the Revised Statutes of 1892, Sec. *461 712 was the substantial equivalent of the present Sec. 169.02, Sec. 714 contained the debt limitation of 5 percent of the assessed valuation, and Sec. 71S was the equivalent of the present Sec. 169.05. Present Sec. 169.04 was subsequently enacted as Chapter 5465, Laws of Florida, 1905. This latter chapter provided for the present 10 percent debt limitation, and section 2 thereof expressly repealed all laws inconsistent therewith.
We conclude, on the basis both of this 1905 repealing section and of the legislative history of the two sections in general, that sections 169.02 and 169.04 do not provide alternate authorizations for municipal bond issues, one imposing a debt limit and the other not. If they were in fact alternates there would be no logical reason for the one with the limitation.
Under their third theory, the town argues that even' if it be held that Sec. 169.04 applies, it would be excluded under the provision that the section “shall not apply to cities and towns which have special charters from the legislature.” More specifically, its position appears to be that when the electors of Dade County adopted the home rule charter and the legislature enacted chapter 57-912 validating and confirming that charter, the effect was to make all municipal charters subsequently adopted pursuant to the home rule charter special charter municipalities within the meaning of the exclusion provision of Sec. 169.04.
We must also reject this theory. The meaning of that provision of Sec. 169.-04, which excludes from its operation “towns which have special charters from the legislature,” must rest in part, if not entirely, upon what the legislature intended at the time of its enactment. Prior to adoption of the home rule amendment there were only two kinds of municipalities, those incorporated under provisions of general law and those created by special or local law. Therefore, it seems to us that by excluding from the limitation of Sec. 169.04 those municipalities created by special or local acts the legislature did not intend to lessen its control over them, but rather intended to deal with them piecemeal one at a time.
However, the home rule amendment authorized a third class of municipality, one that cannot be dealt with piecemeal. The home rule amendment prohibits the legislature from passing any law relating to a Dade County municipality unless such law also relates to any other one or more municipalities in the State. Therefore, agreement with the town’s position on this point would mean that the legislature would have no authority whatsoever over the debt of those municipalities in Dade County which are chartered by the governing board of that county. Under the town’s theory general law would not apply because of the exemption in Sec. 169.04 and no control could be exercised by special act due to the prohibition in the home rule amendment. We are certain that this was not the intention of the legislature in enacting See. 169.04 or of the people of this State in adopting the home rule amendment.
We therefore hold that the debt limitation imposed by Sec. 169.04 is applicable to municipalities created under the Dade County Home Rule Charter.
It follows that the final decree of validation is defective for both of the reasons offered by the appellants. The decree is reversed and the cause remanded for such further proceedings as may properly be entertained by the chancellor.
THORNAL, C. J., and THOMAS and CALDWELL, JJ., concur.
ERVIN, J., concurs in conclusion.