QUESTIONS:
1. May a claims bill be validly passed by the legislature affecting a home rule county such as Duval, Sarasota, or Volusia?
2. If such a validly enacted bill is adopted, how may the claimant enforce the payment of the amount awarded him in the claims bill?
SUMMARY:
Assuming that a special act requiring the payment of a sum certain from county funds or from funds due the county from the state treasury for the relief of a claimant (a so-called claims bill) has been validly enacted under Art. III, s. 10, State Const., and is otherwise valid under Art. VII, s. 10, id.(an issue presently pending in the Florida Supreme Court), such a claims bill relating to a single county chartered under Art. VIII, s. 1(c), id.(such as Volusia or Sarasota Counties) will not become effective unless and until it is approved by the electors of that county. However, claims bills payable from funds of the state, a nonchartered county, or the Consolidated Government of the City of Jacksonville, do not require referendum approval.
A claims bill validly adopted may be enforced by the claimant in a mandamus proceeding against the official or officials whose duty it is under the act to pay the sum awarded for the relief of the claimant or, in an appropriate case, in a declaratory judgment proceeding.
AS TO QUESTION 1:
It might be noted at the outset that the validity of a claims bill is now under attack in the Florida Supreme Court — Dickinson v. Bradley, pending on appeal from a judgment entered in the Leon County Circuit Court — on the ground, among others, that the appropriation of public funds therein made for the benefit of a private individual violates Art. VII, s. 10, State Const., prohibiting the state or any local governmental agency from giving, lending, or using its taxing power or credit "to aid any corporation, association, partnership or person." It should also be mentioned that the Florida Supreme Court has held that a claims bill should be adopted in accordance with the constitutional requirements for the enactment of special laws, Art. III, s. 10, id. Dickinson v. Board of Public Instruction of Dade County,217 So.2d 553, 555 (Fla. 1968). Your request is, however, concerned only with the questions of whether a claims bill may validly be passed if it affects only a single county (such as Duval, Sarasota, or Volusia) operating under a home rule charter; and, if so, how it may be enforced.
Your questions were generated by the decision of the Florida Supreme Court in the Dickinson case, supra, striking down a claims bill enacted for the relief of the father of a school child who was fatally injured while playing on a Dade County elementary school grounds and appropriating for this purpose five thousand dollars from funds due the county school board from the state treasury not specifically appropriated to a particular use. The statute was invalidated for the reason, among others, that it was a special and local act, applicable only to Dade County, and thus proscribed by the provisions of Art. VIII, s. 11, State Const. 1885 (the "Dade County Home Rule Amendment," still in full force and effect by virtue of the provisions of Art. VIII, s. 6(e), State Const.), under which the legislature's power to legislate concerning affairs in Dade County is limited to "general laws which shall relate to Dade County and any other one or more counties in the state of Florida." The court said:
"As we have done on other occasions, we concur in the view that in matters which affect only Dade County, and which are not the subject of specific constitutional provisions or valid general acts pertaining to Dade County and at least one other county, the electors of Dade County may "govern themselves autonomously and differently than the people of other counties of the state." S. 
J Transportation, Inc. v. Gordon, 176 So.2d 69 (Fla. 1965)."
Volusia and Sarasota Counties are operating under home-rule charters adopted pursuant to the general authority provided by Article VIII, s. 1(c), State Const. (the "1968 Home Rule Article"). The governments of Duval County and the City of Jacksonville, and other local governmental entities within Duval County, were consolidated into a single body politic and corporate — the Consolidated Government of the City of Jacksonville — by legislative acts adopted in 1967 (Ch. 67-1320, Laws of Florida, as amended) pursuant to the authority of the Jacksonville Consolidated Amendment to the Constitution adopted in 1934 (Art. VIII, s. 9, State Const. 1885, preserved and continued in force by Art. VIII, s. 6(e), State Const.). Section 1(g) of the 1968 Home Rule Article (applicable to Volusia and Sarasota Counties) delegates to counties chartered thereunder "all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors." However, the Jacksonville Consolidation Amendment merely authorizes the legislature to create a municipal corporation to have all the powers, rights, privileges, and obligations of a county as well as a city. Neither the Jacksonville Consolidation Amendment nor the 1968 Home Rule Article contains a provision similar to that found in the Dade County Home Rule Amendment. And, in the absence of such a constitutional inhibition, I have the view that the legislature is not prohibited from passing a claims bill applicable only to one of these counties (if enacted in conformity with the requirements of Art. III, s. 10, State Const., and if not prohibited under Art. VII, s. 10, State Const.). Cf. Benvento v. Board of Public Instruction, 194 So.2d 605 (Fla. 1967), involving a claims bill adopted by a special act applicable to Palm Beach County, which the court said in Dickinson was distinguishable.
However, insofar as Volusia and Sarasota Counties are concerned, such an act would not, in my opinion, become effective unless approved by the electors of the county. This conclusion is inescapable from the nature of the constitutional delegation of home rule power made by s. 1(g) of the 1968 Home Rule Article, which vests in counties operating under county charters adopted pursuant thereto "all powers of local self-government not inconsistent with general law, or with special law approved by vote of the electors," (Emphasis supplied.) and the basic principle of county home rule as a "redistribution" of the state's sovereign powers between the state and the county, with the right to legislate in fields of general statewide concern being reserved to the legislature and with the power to legislate in matters of local concern being delegated to the chartered county. Attorney General Opinion 071-109. This view is also in accord with the court's interpretation of the Dade County Home Rule Amendment, which in the respect here relevant provided merely that the amendment providing home rule for Dade County should not limit or be construed to limit the power of the legislature to enact "general laws which shall relate to Dade County and any other one or more counties" in the state (except as expressed therein). In S J Transportation, Inc. v. Gordon, 176 So.2d 69, 71 (Fla. 1965), relied upon in Dickinson, supra, the court said that the Dade County Home Rule Amendment was intended to give to the electors of Dade County "home rule or autonomy in affairs pertaining solely to Dade County," retain the supremacy of the Constitution and valid general laws, except as specifically provided therein, and retain in the legislature "the full authority to enact general laws affecting Dade and one or more counties." It concluded that a "reasonable construction of this constitutional scheme is that the Legislature no longer has authority to enact laws which relate to Dade County."
The provisions of s. 1(g) of the 1968 Home Rule Article were also intended to give to counties chartered thereunder home rule or autonomy in affairs pertaining solely to the county and to retain in the legislature the full authority to enact valid general laws and special laws "approved by vote of the electors." And a reasonable construction of this "constitutional scheme" is that the legislature no longer has authority to enact a special law relating only to a chartered county unless the effectiveness of such law is predicated upon approval by the electors of that county.
As to the Consolidated Government of the City of Jacksonville, the controlling constitutional provision is different. It has been said that this provision is not self-executing. Jackson v. Consolidated Government of City of Jacksonville, 225 So.2d 497
(Fla. 1969). It does provide that the new consolidated government
". . . may exercise all the powers of a municipal corporation and shall also be recognized as one of the legal political divisions of the State with the duties and obligations of a county and shallbe entitled to all the powers, rights and privileges, including representation in the State Legislature, which would accrue to itif it were a county." (Emphasis supplied.)
However, it was adopted in 1934, long before the concept of home rule had made any headway in this state, and was obviously designed to accomplish a consolidation of municipal and county governments rather than county or city home rule. Under the implementing legislation, the consolidated government created by the legislature "has broad home rule powers, including all of the powers and obligations of the former municipalities within its boundaries." Jackson at 502. However, I find nothing in the controlling constitutional provision that can be construed as a constitutional guarantee to the consolidated government of all the rights conferred upon a county chartered under s. 1(c) of the 1968 Home Rule Article or upon a municipality by s. 2 of that article. Moreover, the Jacksonville Consolidation Amendment itself provides that the legislature may amend or extend the law creating the municipal corporation "without referendum to the qualified voters unless the Legislative act providing for such amendment or extension shall provide for such referendum." And it necessarily follows that the electors of the Consolidated Government of the City of Jacksonville have no constitutional right to approve special laws relating solely to the consolidated government as a condition precedent to their effectiveness.
Thus, just as there is no constitutional requirement that claims bills payable from state or nonchartered county funds must receive referendum approval prior to their effectiveness, there is no such requirement as to claims bills applicable to the Consolidated Government of the City of Jacksonville.
AS TO QUESTION 2:
The claims bill considered by the court in the Dickinson case appropriated money from funds due the school board from the state treasury, directed the comptroller to draw a warrant for the sum appropriated upon such funds, and directed the state treasurer to pay the sum so appropriated to the claimant. Mandamus is an extraordinary remedy which lies to enforce the performance of a ministerial act or duty. See Rice v. Arnold, 45 So.2d 195 (Fla. 1950); City of Coral Gables v. State, 44 So.2d 298 (Fla. 1950); State ex rel. Long v. Carey, 164 So. 199 (Fla. 1935); and State ex rel. Bloxham v. Gibbs, 13 Fla. 55 (1871). A duty or act is ministerial when there is no room for the exercise of discretion, the performance being required by direct command of law. State ex rel. Allen v. Rose, 167 So. 21 (Fla. 1936). It would appear, therefore, that the remedy of mandamus would be available to compel the payment of the sum awarded to the claimant by the official or officials whose duty it is, under a claims bill, to do so (assuming, of course, that the bill has been validly enacted as a special act and is otherwise valid under Art. VII, s. 10, State Const. In appropriate circumstances, the declaratory judgment proceedings authorized by Ch. 86, F.S., may be utilized. Section86.111; Miller v. Doss, 36 So.2d 442 (Fla. 1948); Town of Palm Beach v. City of West Palm Beach, 55 So.2d 567 (Fla. 1951); Rosenhouse v. 1950 Spring Term Grand Jury, 56 So.2d 445 (Fla. 1952); Fisher v. Dade County, 127 So.2d 132 (3 D.C.A. Fla., 1961).