The Honorable Bob Graham Governor, State of Florida
The Honorable Vicki Tschinkel Secretary, Department of Environmental Regulation
QUESTIONS:
1. Can the Governor by executive order and the Governor and Cabinet by resolution or otherwise give binding directions to state agencies to implement and comply with Florida's Coastal Zone Management Plan without violating the requirements of the Florida Administrative Procedure Act?
2. May a state agency fund a legislatively authorized project without first adopting rules governing such expenditures?
SUMMARY:
1. Absent specific statutory authority therefor, the Governor may not by executive order give binding directions to any of the state executive departments created by ch. 20, F.S., to implement and comply with the Florida Coastal Management Plan or the Florida Coastal Management Act of 1978 or exercise any rulemaking authority in such regard for or on behalf of such administrative or executive departments.
2. To the extent that any state administrative or executive agency or department is assigned to and governed by the Governor and the Cabinet as the agency head and is statutorily authorized or required to implement or comply with the Florida Coastal Management Plan or the Florida Coastal Management Act of 1978, the Governor and the Cabinet may give binding directions by resolution or other written direction to such agencies or the staff thereof to comply or execute and implement any statutory requirements applicable to and governing such agency or agencies, including those contained in the Florida Coastal Management Act of 1978.
3. A resolution or other expression or direction of the Governor and Cabinet as the governing head of any administrative or executive agency or department ordering its staff or employees to execute and implement or comply with any statutory requirements, including the Florida Coastal Management Act, governing that agency would not be subject to the rulemaking procedures or requirements prescribed by the Florida Administrative Procedure Act, ch. 120, F.S.
4. The provisions of ch. 120, F.S., per se, do not authorize or require any state administrative or executive agency or department to adopt rules governing the disbursement of its appropriations or its funding of a legislatively authorized project; such rule or rules may be promulgated if the affected agency or department is given the statutory duty or discretionary authority to do so.
AS TO QUESTION 1:
An answer to your first question requires a determination of what power the Governor or the Governor and Cabinet possess which would permit them to direct state agencies to act and, assuming the Governor or the Governor and Cabinet do possess such a power over state agencies, whether the various state agencies are authorized or required by law to act in the manner directed by the Governor or the Governor and Cabinet.
The Governor has no inherent powers but possesses only those powers and duties as are vested in him by the Constitution and the statutes of the state. Attorney General Opinion 068-58; 16 C.J.S. Constitutional Law s. 167; 81A C.J.S. States s. 130; see also AGO's 071-28 and 080-77. The Florida Constitution specifies in s. 1, Art. IV, that the Governor is the state's chief executive officer and "[h]e shall take care that the laws be faithfully executed . . . ." Research of the Florida decisional law which mentions this particular language of the Constitution does not reveal that the language has ever been interpreted or construed as conveying to the Governor any specific power with regard to, or blanket control over, the operations of state agencies or the actual and direct execution of the laws. See In Re Advisory Opinion to the Governor, 9 So.2d 172 (Fla. 1942); Advisory Opinion to the Governor, 200 So.2d 534 (Fla. 1967); and Thompson v. State,342 So.2d 52 (Fla. 1977). Indeed, these decisions involve either the Governor's exercise of a specifically enumerated constitutional duty (appointment of public officers in In Re Advisory Opinion to the Governor, supra) or the exercise of a specific statutory power conferred upon him as a result of the legislative implementation of s. 1, Art. IV (protection of the life, liberty and property of the state and its inhabitants against criminal acts in Advisory Opinion to the Governor, supra, and in Thompson v. State, supra). Far from holding that the language of s. 1, Art. IV, quoted above, empowers the Governor to exercise some prerogative power to execute the laws pursuant to his authority to see that all the laws of this state are carried out, these decisions appear to be a recognition of the proposition that the Governor's general authority to "take care that the laws be faithfully executed" does not by implication confer any specific power which he does not otherwise possess but that this general power is limited by his specific constitutional powers and statutory authority. See 81A C.J.S. States s. 130. See also 16 Am.Jur.2d Constitutional Law s. 303; 38 Am.Jur.2d Governor s. 4; Shields and Preston v. Bennett, 8 W. Va. 74 (W.Va.1874), and Henry v. State, 39 So. 856 (Miss. 1906).
To maintain that the Governor's general constitutional duty to see that the laws are "faithfully executed" confers some prerogatory power over state agencies which the Governor does not otherwise specifically possess also runs contrary to the plain language of s. 6, Art. IV, State Const., which expressly provides that all functions of the executive branch will be distributed among not more than 25 departments and which further provides that:
 . . . The administration of each department, unless otherwise provided in this constitution, shall be placed by law under the direct supervision of the governor, the lieutenant governor, the governor and cabinet, a cabinet member, or an officer or board appointed by and serving at the pleasure of the governor . . . . (Emphasis supplied.)
It is a maxim of constitutional construction that in construing provisions of a constitution, each provision must be given effect, according to its plain and ordinary meaning. In re Advisory Opinion to Governor Request of June 29, 1979, 374 So.2d 959
(Fla. 1979). When this tool of construction is applied to the quoted language of s. 6, Art. IV, it must be concluded that the Governor's general constitutional duty to see that the laws are "faithfully executed" does not confer on him any power of direct control and supervision over all state agencies; to hold otherwise, would render the plain language of s. 6, Art. IV, meaningless. It is a further rule of constitutional construction that where one method or means of exercising power is prescribed, the exercise of such power in other ways is excluded. S J Transportation, Inc. v. Gordon, 176 So.2d 69 (Fla. 1965). The plain and ordinary meaning of the language of s. 6, Art. IV, is that the power of administration and direct supervision over the 25 executive departments shall only be exercised by either the governor, the lieutenant governor, the governor and cabinet, a cabinet member, or an officer or board appointed by and serving at the pleasure of the governor, as determined by the Legislature, unless the constitution provides otherwise. Accordingly, I am constrained to conclude that the issue of whom may exercise the power of administration and direct supervision over a particular state agency is left to the wisdom of the Legislature, unless such has been pre-empted by the Constitution. The Constitution provides otherwise only with regard to the State Board of Education (see s. 2, Art. IX, State Const.), the State Board of Administration (see s. 9, Art. XII, State Const.), the Game and Fresh Water Fish Commission (see s. 9, Art. IV, State Const.), and the Parole and Probation Commission (see s. 8(c), Art. IV, State Const.).
The Legislature has implemented the dictates of s. 6, Art. IV, by the enactment of ch. 20, F.S., known as the Governmental Reorganization Act of 1969. It is the declared policy of ch. 20, F.S., that the responsibility for the implementation of programs and policies by state agencies be "clearly fixed and ascertainable" and in subsections (1)(a) and (b) of s. 20.05, this responsibility is assigned to each agency head who shall, among other things:
 (1)(a) Plan, direct, coordinate, and execute the powers, duties, and functions vested in that department or vested in a division, bureau, or section of that department; powers and duties assigned or transferred to a division, bureau, or section of the department shall not be construed to be a limitation upon this authority and responsibility.
 (b) Have authority, without being relieved of responsibility, to execute any of the powers, duties, and functions vested in said department or in any administrative unit thereof through said administrative units and through such assistants and deputies as shall be designated by the head of the department from time to time, unless the head of the department is explicitly required by law to perform the same without delegation.
Under subsections (1)(a) and (b) the direction, control and execution of an agency's powers, duties and functions is exclusively limited to the head of the agency or by such agency head through the administrative units of the agency and such assistants and deputies as may be designated by the agency head, unless the head of the department is explicitly required by law to perform the same without delegation. See AGO 075-306.
A review of ch. 20, F.S. reveals that the Legislature has not named the Governor, alone, as head of any of the executive departments specified therein. (However, in s. 14.201, F.S., the Legislature does designate the Governor as head of the Executive Office of the Governor. See ss. 14.201 and 14.202, F.S.) Although the Governor and Cabinet are named as "head of the department" of several executive departments, the Legislature has not specified that the Governor, alone, shall exercise any of the powers and duties of a department head. Cf. ss. 14.201 and 14.202, F.S. Because only the "head of the department" may, pursuant to subsection (1)(a) of s. 20.05, F.S., direct the powers, duties and functions vested in a department, or, pursuant to subsection (1)(b) execute the same through designated administrative units, assistants and deputies, and because the Governor is not the head of any executive department (except the executive office of the Governor) I am of the opinion that the Governor may not by executive order give binding directions to any of the state executive departments created in ch. 20, F.S., to implement and comply with Florida's Coastal Zone Management Plan or the Florida Coastal Management Act or exercise any rulemaking authority in that regard over or for such executive departments, absent some specific authorization in part II of ch. 380, F.S., or other general law, which would permit such.
The Cabinet, like the Governor, is a creature of the Constitution, and possesses only those powers conferred by the Constitution or prescribed by statute. See s. 4, Art. IV, State Const. In addition to the individual constitutional duties and powers conferred upon each Cabinet member, subsection (a) of s. 4, Art. IV, directs that the Cabinet "shall exercise such powers and perform such duties as may be prescribed by law." Unlike the Governor who the Legislature has made the department head of only the Executive Office of the Governor, the Legislature in ch. 20, F.S., has made the Cabinet together with the Governor the head of several executive departments. In particular, the Governor and Cabinet sit as department head of the Department of Revenue, see s. 20.21(1), F.S.; the Department of General Services, see s. 20.22(1), F.S.; the Department of Highway Safety and Motor Vehicles, see s.20.24(1), F.S.; the Department of Natural Resources, see s. 20.25(1), F.S.; the Department of Education, see s. 20.15(1), F.S.; and the Department of Law Enforcement, see s. 20.201(1), F.S. As department head of the above named agencies, the Governor and the Cabinet are authorized to direct and execute the power, duties and functions of those agencies. Thus, to the extent that one of these departments is statutorily authorized or required to implement or comply with Florida's Coastal Zone Management Plan or the Coastal Management Act, it would be my opinion that the Governor and Cabinet, as department head, could give binding directions by resolution or other written direction that a given department comply or execute and implement any statutory requirements applicable to and governing a particular department so far as the same relates to the State Coastal Zone Management Plan or the Florida Coastal Management Act of 1978. Again, this opinion is premised on the Governor and Cabinet being the "head of the department" and on the department having the requisite statutory authority or duty to execute, comply with or implement the Coastal Management Plan or the Coastal Management Act.
The question has been raised whether such a resolution or other written direction would violate the rulemaking requirements of ch. 120, F.S. Under the definition of "agency" found in s.120.52(1)(b), F.S., the Governor and Cabinet acting as a collegial body and as the head of a given department would be subject to ch. 120, F.S. However, being governed by ch. 120 does not necessarily mean that such a joint resolution or other written direction or expression of the will of that body directed to the administrative units or the officials or employees of a given department commanding them to execute or comply with or implement statutes applicable to and controlling the functions and operations of a particular department would be subject to the rulemaking requirements of ch. 120, F.S. Even if such executive direction were to be deemed a rule, it would simply constitute a rehearsal or restatement of what the law already requires of the department and its governing head. Moreover, a department's general rulemaking power is circumscribed by and limited to the statutes prescribing its powers, duties and functions in particular areas, such as the Florida Coastal Management Act, and it may prescribe only such rules or regulations as come within the specifications laid down by the governing statute or statutes. See, e.g., s.20.05(5), F.S.; s. 120.54(14), F.S.; Lewis v. Florida State Board of Health, 143 So.2d 867 (1 D.C.A. Fla., 1962); and Department of Health and Rehabilitative Services v. Florida Psychiatric Society, Inc., 382 So.2d 1280 (1 D.C.A.Fla., 1980). Section 120.52(14)(a), F.S., provides that internal management memoranda are exceptions to the definition of "rule" and thus fall outside the scope of ch. 120, F.S. However, such memoranda must neither affect the private interests of any person, nor any plan or procedure which is important to the public and must have no application outside of the agency issuing such memoranda. See s. 120.52(14)(a), F.S. This exception has been narrowly interpreted such that memoranda affecting the private interests of any person were held not to be excluded from the reach of ch. 120, F.S. Webster v. South Florida Water Management District, 367 So.2d 734 (4 D.C.A.Fla., 1979). Any internal action taken or directions to the administrative units of a department to comply with or execute existing laws governing that agency by the Governor and Cabinet as head of a particular agency would seem to fall outside the purview of ch. 120, F.S. Therefore, a joint resolution or other written direction which is mandatory only upon a state agency headed by the Governor and Cabinet, and which is not of general applicability and does not affect the private interest of any person, may be considered to be an internal management memorandum. Thus, in agencies like the Department of Natural Resources, which is headed by the Governor and Cabinet (s. 20.25(1), F.S.), any directions given to the staff of the agency itself to comply with or execute such provisions of the Florida Coastal Management Act of 1978 as are applicable to and govern the operations of such agency would seem to effectively avoid the rulemaking requirements of s. 120.54. It would therefore be my opinion that a joint resolution or other expression or direction which simply orders agency staff to execute and implement or comply with any statutory requirements governing a particular agency would not be subject to ch. 120, F.S.
AS TO QUESTION 2:
The second question which you raise is whether a state agency may fund a legislatively authorized project without first adopting rules governing such an expenditure. The answer to your question is dependent upon the legislative direction given an agency with regard to its funding of the project. Cf. s. 380.22(3), F.S. (provides that the Secretary of Environmental Regulation shall adopt, by rule, a specific formula for the allocation of federal funds for the administration of the state coastal management program).
Except for those agencies specifically created by the Constitution, an administrative agency is strictly a creature of the Legislature and possesses only those powers, duties and responsibilities as are given it by the Legislature. More specifically, an agency may not promulgate rules or regulations without the authority to do so being given it by the Legislature. This authorization can be in the form of specific rulemaking authority, e.g., s. 466.024(1), F.S., or in the context of general rulemaking authority, e.g., s. 460.405, F.S. No state agency has inherent rulemaking power. See s. 120.54(14), F.S.
No statute has been brought to my attention which uniformly authorizes or requires every agency to promulgate rules and regulations governing its funding of legislatively authorized projects. Further, my review of the Administrative Procedure Act (ch. 120, F.S.) does not disclose any specific provision requiring such rules. The only directive to promulgate certain rules which is contained in ch. 120, F.S., is found in s. 120.53, F.S., which provides, in pertinent part, that:
 (1) In addition to other requirements imposed by law, each agency shall:
 (a) Adopt as a rule a description of its organization, stating the general course and method of its operations and the methods whereby the public may obtain information or make submissions or requests.
 (b) Adopt rules of practice setting forth the nature and requirements of all formal and informal procedures, including a list of all forms and instructions used by the agency in its dealings with the public. The list of forms and instructions shall include the title of each form or instruction and a statement of the manner in which the form or instruction may be obtained without cost.
 (c) Adopt rules of procedure appropriate for the presentation of arguments concerning issues of law or policy, and for the presentation of evidence on any pertinent fact that may be in dispute.
 (d) Adopt rules for the scheduling of meetings, hearings, and workshops, one of which shall be that an agenda shall be prepared by the agency in time to insure that a copy of the agenda may be received at least 7 days before the event by any person in the state who requests a copy and who pays the reasonable cost of the copy. . . .
The provisions of s. 120.53(1), quoted above, speak to the requirement that an agency promulgate rules of organization and practice and procedure and it does not purport to require rules governing the disbursement of agency funds or the funding of legislatively authorized projects.
It would be my opinion that ch. 120, F.S., standing alone, neither authorizes nor requires a state agency to promulgate rules governing the disbursement of its appropriations or its funding of legislatively authorized projects. No such authority or duty has been prescribed by the Legislature to my knowledge. To hold otherwise, would be to accord more authority to state agencies than they actually possess. However, this opinion does not preclude the promulgation of such rules if an agency is given the statutory duty or discretionary authority to do such.
Prepared by: John Griffin, Assistant Attorney General