Mr. George F. Knox, Jr. City Attorney City of Miami 174 E. Flagler Street Miami, Florida 33131
Attention: Mr. Robert F. Clark, Deputy City Attorney
Dear Mr. Knox:
This is in response to a request from your office for an opinion on the following question:
 WHAT IS THE EFFECT OF THE LANGUAGE IN s 100.361(8) AND (9), F.S., RELATING TO `UNIFORM STATEWIDE' MUNICIPAL RECALL PROCEDURES UPON THE CITY OF MIAMI, A SPECIAL CHARTER MUNICIPALITY WITHIN DADE COUNTY, WHOSE MUNICIPAL CHARTER CONTAINS DISSIMILAR RECALL PROCEDURES?
According to the information supplied to this office, the City Attorney's Office for the City of Miami has generally taken the position in the past that the Miami City Charter and the Dade County Charter have `placed the City in the position where neither the provisions of Chapter 166, F.S. nor other general laws applicable to municipalities directly impact upon the City of Miami Charter.' Your office, however, has expressed a willingness to recognize the overall applicability of s 100.361, F.S., due in part to Art. VI, s 6, State Const., which states that registration and elections in municipalities shall be provided by law, and the provisions of s 100.361(8), F.S., stating that it is the intent of the Legislature that the recall procedures provided within s100.361 shall be uniform statewide. The Division of Elections of the Secretary of State's Office, which is charged with the administration and interpretation of the state election code, in response to a request from your office as to whether the recall procedures contained in the Miami City Charter take precedence over the procedures set forth in s 100.361, referred your office to DE 078-48 wherein the division concluded that the provisions of s 100.361 were applicable to municipalities regardless of whether municipalities had adopted recall provisions. DE 078-48, however, was issued to a municipality located in a noncharter county and the issue as to whether a municipality located in Dade County would be subject to the provisions of s 100.361 was not considered therein. According to your letter, your office has been informed that the city clerk is presently following the procedures set forth in s 100.361 to the exclusion of the provisions in the Miami City Charter. In subsequent conversations with the Division of Elections by your office, it was suggested that in light of AGO's 079-38 and 076-167 the opinion of this office should be requested as to the effect of the state statute regarding municipal recall on the City of Miami whose charter contains `dissimilar' recall procedures. See AGO 076-167 wherein this office concluded that as there is a constitutional provision (Art. VIII, s 11[1][g], State Const. 1885, carried forward by Art. VIII, s 6[e], State Const. 1968), prohibiting the Legislature from amending or repealing the charter of any municipality in Dade County, section 100.361 did not have the effect of amending or repealing any charter provision of a Dade County municipality relating to municipal recall. Accord: AGO 079-38.
Article VIII, s 11(1)(g), State Const. 1885, granted to the electors of Dade County the power to adopt (and revise and amend) a home rule charter for the county which charter `[s]hall provide a method by which each municipal corporation in Dade County shall have the power to make, amend or repeal its own charter.' Subsection (1)(g) further provides that `[u]pon adoption of this home rule charter by the electors this method shall be exclusive and the Legislature shall have no power to amend or repeal the charter of any municipal corporation in Dade County.' Article VIII, s 11(6), State Const. 1885, however, states:
 Nothing in this section shall be construed to limit or restrict the power of the Legislature to enact general laws which shall relate to . . . any municipality in Dade County and any other one or more municipalities of the State of Florida relating to . . . municipal affairs and all such general laws shall apply to . . . all municipalities [in Dade County] to the same extent as if this section had not been adopted and such general laws shall supersede any part or portion of the home rule charter provided for herein in conflict therewith . . . and shall supersede any provision of any charter of any municipality in Dade County in conflict therewith.
And see Art. VIII, s 11(9), State Const. 1885, which states in part that `it is further declared to be the intent of the Legislature and of the electors of the State of Florida that the provisions of this Constitution and general laws which relate to . . . any municipality in Dade County and any other one or more municipalities of the State of Florida enacted pursuant thereto by the Legislature shall be the supreme law in Dade County, Florida, except as expressly provided herein and this section shall be strictly construed to maintain such supremacy of this Constitution and of the Legislature in the enactment of general laws pursuant to this Constitution.' Article VIII, s 11, State Const. 1885, was carried forward in full force by Art. VIII, s 6(e), State Const. 1968.
In Dade County v. Dade County League of Municipalities,104 So.2d 512 (Fla. 1958), the Florida Supreme Court held that the provisions of Art. VIII, s 11(1)(g), State Const. 1885, read in conjunction with the language of s 11(5) and (6) of Art. VIII, which preserved to the state Legislature the power to enact general laws which would be applicable to the municipalities of Dade County, denied to the state Legislature the power to regulate or control municipalities in Dade County by special or local acts.Compare Seminole Rock Products, Inc. v. Town of Medley,180 So.2d 457, 460 (Fla. 1965), in which the Court stated that it could see no express authorization in the provisions of s 11(1)(e) of Art. VIII, State Const. 1885, which authorized the Dade County Charter to provide `a method for establishing new municipal corporations (and other governmental units) in Dade County . . . and provide for their government and prescribe their jurisdiction and powers,' that could be taken to immunize the Dade County Home Rule Charter or the charters of Dade County municipalities from the operation of the Constitution or of general law; rather, the Court saw only a general authorization to provide for the establishment of municipalities which would be subject to the Constitution and valid general laws then in existence or thereafter passed. In interpreting the language of s 11(6) and (9) of Art. VIII, State Const. 1885, the courts have held:
 [I]n matters which affect only Dade County, and which are not the subject of specific constitutional provisions or valid general acts pertaining to Dade County and at least one other county, the electors of Dade County may `govern themselves autonomously and differently than the people of other counties of the state.' S J Transportation, Inc. v. Gordon, 176 So.2d 69 (Fla. 1965). In the cited opinion we announced the view that a reasonable construction of the constitutional scheme formulated for the government of Dade County alone suggests that the Legislature `no longer has authority to enact laws which relate only' to the affairs of Dade County. Dickinson v. Board of Public Instruction of Dade County, 217 So.2d 553, 555 (Fla. 1968).
Cf. Board of County Commissioners of Dade County v. Wilson,386 So.2d 556, 561 (Fla. 1980), wherein the Court held that while Art. VIII, s 11 of the 1885 Constitution, authorizes the Dade County home rule charter, the section also mandates that general laws enacted subsequent to adoption of the home rule charter shall apply to Dade County and to all municipalities therein to the same extent as if the section had not been adopted; the Court thus concluded that `it is the general law which supersedes the Home Rule Charter.' Recently, the Third District Court of Appeal considered the applicability of a provision in the state election code, s 99.012, F.S., the Resign-to-Run Law, to a municipality within Dade County whose charter contained a conflicting provision. The court, specifically referring to Art. VIII, s 11(6), State Const. 1885, concluded that where there is a conflict between a charter of a Dade County municipality and the general law of the state, the general law prevails. See City of Hialeah v. Martinez, 402 So.2d 602 (3 D.C.A. Fla., 1981). And see State v. City of Miami Springs, 245 So.2d 80 (Fla. 1971), wherein the Florida Supreme Court stated that as s 169.021, F.S., related to all municipalities in Florida, it clearly complied with the constitutional restriction contained in Art. VIII, s 11, State Const. 1885, carried forward by Art. VIII, s 6(e), State Const. 1968, requiring that legislation affecting any municipality in Dade County must also relate to at least one other municipality in Florida; thus the general law controlled over a conflicting provision in the City of Miami Springs Charter.
Based upon the foregoing decisions, I must therefore conclude that when the Legislature enacts a general law which is applicable not only to a municipality in Dade County but also to one or more municipalities outside Dade County, such provision will prevail over a conflicting provision in a charter of a Dade County municipality. In addition, with regard to the instant inquiry, section 100.361(8), F.S., expressly states that it is the intent of the Legislature that the recall procedures provided therein shall be uniform statewide and that all municipal charters and special law provisions which are contrary are repealed to the extent of such conflict. See also s 100.361(9), F.S., stating that the provisions of s 100.361 are applicable to cities and charter counties which have adopted recall procedures. In view of the foregoing, I am of the opinion that the provisions of s 100.361, F.S., are applicable to municipalities within Dade County and will prevail over any conflicting provisions in such municipalities' charters to the extent of the conflict. To the extent that previous opinions of this office are to the contrary, they are hereby modified or superseded.
Sincerely,
Jim Smith, Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General